UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LELO, INC.,<br>   Plaintiff,<br><br>  v.<br><br>STANDARD INNOVATION (US) CORP., et al.,<br>   Defendants. | Case No. 13-cv-01393-JD<br><br>**ORDER GRANTING STAY PENDING INTER PARTES REVIEW AND MOTION TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 22, 42 |

## INTRODUCTION

This case arises out of a dispute over United States Patent No. 7,749,178 (the "'178 patent") for a massager with an inductively chargeable power source. The parties have been involved in battles against each other in the Southern District of Texas and before the United States International Trade Commission over other patents and commercial practices relating to massagers. In this case, plaintiff LELO, Inc. ("LELO") accuses defendants Standard Innovation (US) Corporation and Standard Innovation Corporation (collectively, "Standard") of infringing the '178 patent by making and selling a device called the "We-Vibe 3." The Patent Trials and Appeals Board ("PTAB") recently granted *inter partes* review of most of the claims in the '178 patent, and Standard has asked the Court to stay this action pending completion of that review. Dkt. No. 22. LELO opposes a stay and filed an Administrative Motion to File Under Seal a declaration of LELO's President in support of its opposition. Dkt. No. 42. The Court finds that this case is well suited for a stay pending the PTAB review, and grants Standard's motion. The Court also grants LELO's motion to seal.

**BACKGROUND**

Standard and LELO are in the business of supplying "intimate products" or "sexual stimulation devices," as the CEOs for the parties put it. Dkt. Nos. 43, 41. They have been at war in different forums for several years. The conflict appears to have started in 2011 when Standard brought infringement claims against LELO in the International Trade Commission ("ITC") and the Southern District of Texas for another massager patent, United States Patent No. 7,931,605 (the "'605" patent), which Standard owns. In 2013, an ITC administrative law judge found that LELO infringed the '605 patent, and the ITC issued a general exclusion order ("GEO") that, among other things, excludes LELO from importing, selling for importation, or selling after importation certain of its products that infringe the '605 patent. Dkt. No. 25 at 8. LELO has appealed the ITC decision. Standard's lawsuit in the Southern District of Texas has been stayed for *inter partes* examination (the precursor procedure replaced by *inter partes* review) of the '605 patent and for further ITC actions.

LELO launched this action on March 28, 2013, when it filed a complaint against the Standard entities for alleged infringement of the '178 patent. LELO appears to have acquired the '178 patent on March 22, 2013, just a few days before filing the complaint. LELO admits that it does not practice the '178 patent, (Dkt. No. 34 at 6), and has not identified any products that it makes or sells based on that patent.

On November 13, 2013, approximately 8 months after LELO started this action, Standard petitioned the PTAB to conduct an *inter partes* review ("IPR") of the '178 patent based on prior art that was not before the U.S. Patent and Trademark Office ("PTO") during prosecution of the application for it. Dkt. No. 23, Ex. 1. On November 15, 2013, Standard moved to stay this matter until the PTAB issued a decision on whether it would conduct an IPR, and then through the course of the review if the PTAB undertook one. Dkt. No. 22. LELO opposed the motion as "gamesmanship" and on more substantive grounds. Dkt. No. 24. On April 4, 2014, Judge Koh of this Court denied the stay without prejudice to re-filing if the PTAB granted review. Dkt. No. 30.

On May 6, 2014, the PTAB instituted IPR of the '178 patent. The PTAB granted review on 21 of the 27 claims stated in the '178 patent -- almost 80% of claims disputed in this case. As

the PTAB found, "we are persuaded that Petitioner [Standard] has demonstrated that there is a reasonable likelihood it would prevail in showing unpatentability of claims 1-8, 10-12, 14-20, and 22-24 of the '178 patent." Dkt. No. 36-1 at 26. On the same day, Standard renewed its Motion to Stay. Dkt. No. 36. On May 9, 2014, LELO opposed the renewed motion. Dkt. No. 37. On June 4, 2014, the Court held a hearing on Standard's renewed motion, and ordered the parties to submit declarations by their clients identifying which, if any, LELO products currently for sale in the United States directly compete with Standard's products that allegedly infringe the '178 patent. Dkt. No. 38. The parties filed those declarations on June 11, 2014. Dkt. Nos. 41, 43. That same day, LELO filed an administrative motion to file its President's declaration ("Sedic Declaration") under seal. Dkt. No. 42.

**DISCUSSION**

**I.     The Motion to Stay**

As our court has found, the 2013 America Invents Act ("AIA"), 35 U.S.C. §§ 311 *et seq.*, streamlined the patent review process by replacing the old re-examination procedure with IPR. *See generally Pi-Net Int'l Inc. v. Focus Bus. Bank*, No. C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16, 2013); *Software Rights Archive, LLC v. Facebook, Inc.*, No. C-12-3970 RMW, 2013 WL 5225522 (N.D. Cal. Sept. 17, 2013). To obtain IPR, a petitioner must show that "there is a reasonable likelihood that the petitioner will prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). The AIA imposes strict time limits on how long the IPR can take. The PTAB must make a final decision on the IPR within one year, which may be extended by up to six months upon a showing of good cause. *Id*. at § 316(a)(11). In addition, the AIA also imposes an important estoppel limitation on invalidity contentions. After IPR is completed, a petitioner is estopped from arguing that "a claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." *Id.* at § 315(e)(2). These and other provisions in the AIA are designed to make IPR faster than re-examination and more likely to have a significant impact in the district court by reducing the scope of the dispute and clarifying the parties' positions.

Our court has typically applied the traditional factors in deciding whether to stay a case pending IPR.  As an initial matter, district courts "have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted); *see also Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Stays are by no means automatic, and no *per se* rule requires the Court to order a stay pending a reexamination, because "such a rule would invite parties to unilaterally derail litigation." *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. C 13-4204 SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014) (citing *ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463, at *2 (N.D. Cal. Sept. 28, 2009) (internal citation omitted); *see also Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The court is not required to stay judicial resolution in view of the reexaminations.").  But a stay is "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D. Cal. 2005).

To decide if a stay is warranted, the Court balances whether: (1) discovery is complete and a trial date has been set; (2) a stay would simply the issues in question and trial; and (3) a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006); *PersonalWeb Technologies v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340 at *1 (N.D. Cal. Jan. 13, 2014).  No single factor operates as the sole determinant of whether to stay.  Rather, the factors should be weighed and balanced to get to the right outcome in each case.

**A.     Status of Discovery and Trial Date**

With respect to the first factor, the limited discovery and early case management posture here cut in favor of a stay.  While not a newborn, this case is still in infancy.  LELO has served interrogatories and requests for production, (Dkt. No. 37 at 1), and the parties have exchanged

4

initial disclosures and plaintiff's infringement contentions, (Dkt. No. 36 at 2). But no other discovery has occurred. A trial date has been set for July 2015, but that is 13 months from now. Dkt. No. 30. No claim construction briefs have been filed and summary judgment is not currently on the horizon. Most of the hard work on discovery and motions remains to be done.

In situations like this, courts have typically held that this factor favors a stay. *See Advanced Analogic Tech., Inc. v. Kinetic Tech., Inc.*, No. C-09-1360 MMC, 2009 WL 4981164, at *2 (N.D. Cal. Dec. 15, 2009) (granting stay where "discovery is in its early stages, and, although trial has been set, it is set for a date more than fifteen months in the future" and "no briefing on the merits of claim construction has occurred, and no dispositive motion has been filed"); *Pragmatus AV, LLC v. Facebook, Inc.*, C-11-02168 EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) (granting stay where plaintiff had served infringement contentions and a first set of interrogatories, requests for admission, and requests for production of documents, and the deadline for defendant's service of invalidity contentions was the day before the court's order); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation).

In addition, this is not a situation where IPR was sought on the eve of claim construction or other potentially dispositive event, or after protracted discovery. Consequently, the procedural posture of this case weighs strongly in favor of a stay.

### B. Simplification of the Issues

The likelihood that IPR will simplify the issues and trial in this case also supports a stay. The central purpose "of the reexamination procedure is to eliminate trial of an issue when a claim is canceled or to facilitate trial by providing the district court with the expert view of the PTO when a claim survives the reexamination proceeding." *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587 DMR, 2013 WL 6672451, at *5 (N.D. Cal. Dec. 18, 2013) (internal quotations and ellipsis omitted) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)). LELO argues that simplification will not happen here because, no matter what, some claims will survive the PTAB review and this lawsuit will continue. This goes too far. The

standard is simplification of the district court case, not complete elimination of it by the PTAB. If this factor turned on LELO's suggestion of an all-or-nothing requirement, the intent of the AIA to streamline patent disputes would be needlessly frustrated, and the ability of district courts to efficiently manage their dockets would suffer.

In this case, the scope of IPR will very likely simplify the case. As noted, the PTAB granted review of almost 80% of the claims in the '178 patent. Initiation of IPR was based on a finding that Standard is reasonably likely to prevail in showing the unpatentability of the claims under review. Dkt. No. 36-1 at 26. Even if the final PTAB decision finds in favor of Standard on only one of the challenged claims, that finding will simplify the case. In addition, the estoppel consequence will simplify matters considerably by barring Standard from proffering invalidity arguments that it raised or could have raised before the PTAB -- a factor that "heavily tips the scale in favor of granting the stay." *Software Rights Archive,* 2013 WL 5225522 at *4. Standard has agreed that both entities -- Standard Innovation (US) Corporation and Standard Innovation Corporation -- will be bound by the estoppel bar, (Dkt. No. 36 at 2), which the Court will strictly enforce. Consequently, the simplification factor strikes forcefully in favor of a stay.

### C. Prejudice or Disadvantage

The evaluation of whether a stay would unduly prejudice LELO or inflict a clear tactical disadvantage on it is a closer call but not enough to overcome the prior two factors. This factor looks at whether there would be undue prejudice or a clear disadvantage. Simply pointing to the possibility of some prejudice or disadvantage is not enough -- the non-moving party must show they would be undue or clear.

LELO reads these factors too lightly. LELO contends that it would suffer prejudice and disadvantage simply because a stay will necessarily cause delay in resolution of its lawsuit. But a general claim of delay alone, without a specific explanation of why that would cause undue prejudice, is not enough to carry the day. *See Software Rights Archive*, 2013 WL 5225522, at *5 (citing *Telemac Corp.*, 450 F.Supp. 2d at 1111 ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice."); *Convergence Tech. (USA) v. Microloops Corp.*, No. 5:10-cv-02051, 2012 WL 1232187, at *2 (N.D. Cal. Apr. 12, 2012) ("Whether good or bad, delay is an

unavoidable consequence to any stay, and numerous courts have determined that a general claim of delay is not enough on its own to constitute undue prejudice."). LELO has not identified any specific examples of why delay would be unduly harmful here.

LELO also contends that it will suffer prejudice and disadvantage because it competes with Standard in the massager market. In assessing prejudice, courts consider whether the parties are competitors, and whether the plaintiff risks harm by defendant's continued use of the allegedly infringing technology. This is because "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages" and "[s]taying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." *Avago Techs. Fiber IP (Sing.) Pte Ltd. v. Iptronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. Jul. 28, 2011) (citation omitted).

The parties' initial briefing on competition was not satisfactory. LELO asserted with little explanation that it competes with Standard. Standard denied competition also without much elaboration. To aid in the determination of this issue, the Court directed the parties to submit declarations from their clients, and not the attorneys, stating as simply and directly as possible how the parties compete, if they do.

The parties submitted declarations from their respective CEOs. LELO's CEO contends that because the parties share a customer base, this factor weighs heavily against a stay. According to LELO, if a stay is granted, Standard's "current and planned infringing products will negatively impact LELO's position in the market" because a stay "would allow [Standard] to continue selling its lower-priced infringing product for as long as the stay is in place." Dkt. No. 24 at 5. The LELO declaration states that LELO and Standard target the same "sophisticated customer base" and are carried by the same "reputable retailers in the adult market." Dkt. No. 43 at 1. It also states that LELO's Picobong Mahana Duo Vibe product -- which was previously found not to infringe Standard's '605 patent, and is therefore not subject to the ITC exclusion order -- directly competes with Standard's We-Vibe products. *Id.* at 2-4.

Standard's CEO contends that LELO cannot be a direct competitor to it because of the ITC's exclusion order prohibiting LELO from importing, selling for importation, or selling after

7

1    importation any of its products which infringe SIC's '605 patent. *See* Dkt. No. 25 at 8.
2    Additionally, Standard contends that LELO does not currently have any products that practice the
3    '178 patent, and so for the purposes of this analysis, the Court should consider LELO to be in the
4    shoes of a non-practicing entity. *Id.* at 9. Standard denies that the Picobong product is
5    "commercially relevant" because it has "very little presence in most of the brick and mortar
6    stores" in the U.S. and it is not designed to be directly competitive with the We-Vibe." *See* Dkt.
7    No. 41 at 4-5.

        While the declarations are contradictory, there is sufficient evidence in the record for the Court to conclude that, while some competition appears to exist between the parties, the overall state of affairs does not raise the specter of undue prejudice or clear disadvantage to LELO. LELO does not practice the '178 patent, and therefore, "by definition, there can be no lost profits." *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed. Cir. 1985); *Software Rights Archive*, 2013 WL 5225522, at *6 (finding no competition where plaintiff did not market any products or services covered by the claims of the patents-in-suit); *Evolutionary Intelligence*, 2013 WL 6672451, at *8 (same). Some of LELO's products, including devices that appear to compete with Standard's We-Vibe device, are subject to the ITC exclusion order. And LELO's assertions that the Picobong device, which is the focus of its declaration, competes with the We-Vibe product are conclusory. Consequently, the Court finds that the competition concern does not threaten undue prejudice or clear disadvantage to LELO.

        After balancing all three factors, the Court finds that a stay is appropriate in this case. A stay will give effect to the AIA by allowing the PTAB to have the first opportunity to resolve the challenged claims in the patent-in-suit before costly litigation continues. *See Software Rights Archive*, 2013 WL 5225522, at *6 (citing H.R. Rep. 112–98 (part I), at 39-40 (2011) (The AIA is aimed at "providing a more efficient system for challenging patents that should not have issued; and reducing unwarranted litigation costs and inconsistent damage awards.")). It will likely streamline and simplify this case. And a stay will not cause undue prejudice or clear disadvantage to LELO.

**II.     LELO's Administrative Motion to Seal**

Turning to LELO's Administrative Motion to File Under Seal, (Dkt. No. 43), in our circuit, in evaluating a motion to seal, two different standards apply depending on whether the request is being made in connection with a dispositive motion or a non-dispositive motion.

For dispositive motions, the historic "strong presumption of access to judicial records" fully applies, and a party seeking sealing must establish "compelling reasons" to overcome that presumption. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006) (quoting *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)). This standard presents a "high threshold," and "a 'good cause' showing will not, without more, satisfy" it. *Id*. at 1180 (citations omitted). When ordering sealing in this context, the district court must also "articulate the rationale underlying its decision to seal." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011).

The non-dispositive motion context is different. There, "the usual presumption of the public's right of access is rebutted," the "public has less of a need for access to court records attached only to non-dispositive motions," and the "public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Kamakana*, 447 F.3d at 1179-80 (citations omitted). In that context, materials may be sealed where the party seeking sealing makes a "particularized showing" under the "good cause" standard of Federal Rule of Civil Procedure 26(c). *Id*. at 1180 (quoting *Foltz*, 331 F.3d at 1138).

In our district, in addition to meeting the applicable standard under *Kamakana*, all parties requesting sealing must comply with Civil Local Rule 79-5, including that rule's requirement that the request must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law" (*i.e.*, is "sealable"). Civ. L.R. 79-5(b). The sealing request must also "be narrowly tailored to seek sealing only of sealable material." *Id*.

Our circuit considers motions to stay to be dispositive where the denial of the stay "is effectively a denial of the ultimate relief sought." *Sec. Exch. Comm'n v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013). Where a motion to stay does not "dispose of any claims or

defenses" and does "not effectively deny [] any ultimate relief sought," it is considered to be non-dispositive. *Id.* Here, as the parties themselves contend, the stay will not fully resolve this action, and so this stay is non-dispositive. Accordingly, the "good cause" standard applies.

LELO moves to seal only certain portions of three paragraphs of the Sedic Declaration and one exhibit attached to the declaration. The proposed redacted text contains confidential sales information, and information pertaining to LELO's sales to a distributor of its products. Exhibit 5 is a one-page invoice that contains confidential pricing information. LELO contends that this information is confidential and not publicly available, and that its disclosure could competitively harm LELO. *See* Dkt. No. 42-1 at 1. The Court finds that good cause has been shown to seal this material, and that the minimal redactions sought by LELO are narrowly tailored to seek the sealing only of sealable material. *See* Civ. L.R. 79-5.

## CONCLUSION

The motion to stay is granted. The stay will remain in place until the PTAB decides the IPR. The Court orders the parties to file a joint status report within three days of the PTAB's final written decision. The Court also orders the party to provide updates on the status of the IPR every 90 days beginning in August 2014. LELO's Motion to File Under Seal is granted. Pursuant to Civil Local Rule 79-5(f)(1), the portions of the Sadic Declaration and Exhibit 5, (Dkt. Nos. 42-4, 42-5), will remain under seal, with public access only to the redacted versions of the declaration and exhibit that are filed as Dkt. No. 43.

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JAMES DONATO
United States District Judge